

**Dated: February 11, 2026**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Wright Brothers Aircraft Title, Inc., | ) | Case No. 21-10994-JDL |
| | ) | Ch. 7 |
| Debtor. | ) | (Involuntary) |
| | ) | |
| | ) | |
| | ) | |
| Acrisure, LLC d/b/a Insurance | ) | |
| Placement Alternatives, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 24-1008-JDL |
| | ) | |
| Wright Brothers Aircraft Title, Inc., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER ON MOTION TO ABSTAIN**

**I. Introduction**

This adversary proceeding arises out of the Debtor, Wright Brothers Aircraft Title,

Inc., ("Debtor") and its principals' participation in a multi-hundred-million-dollar Ponzi

scheme and drug trafficking enterprise. The factual details of the convoluted and criminal conduct of the Debtor and others are set forth in greater detail below; however, the specific issues in the present adversary proceeding arise from the procurement of first-party indemnity crime insurance policies (the "Crime Policies") issued by Those Certain Underwriters at Lloyd's of London ("Underwriters") and purchased from insurance broker Plaintiff Acrisure, LLC d/b/a Insurance Placement Alternatives ("IPA"). The Crime Policies were to protect Debtor against any criminal conduct of its employees as well as to protect the interests of parties that had deposited funds with Debtor ostensibly for the purchase of aircraft.

This declaratory judgment action by IPA against the Debtor and Defendant Creditors (hereinafter referred to as "Depositors")[1] seeks a declaration that the claims asserted by the Depositors against IPA in litigation pending in Florida are (1) derivative of the Debtor's own claims or belong exclusively to the Debtor and are thus property of the bankruptcy estate to be litigated in Bankruptcy Court, or, in the alternative, (2) the Debtor does not have a claim against IPA because IPA owed it no duty as an insurance broker.

In their Motion to Abstain, Depositors contend that the only claims which might exist

---

[1] The semantics of Plaintiff IPA's reference to the Defendant Creditors as "Depositors" and the Defendants' description of themselves as "Loss Payees" is because Defendant's view themselves as beneficiaries of the crime policies issued by Underwriters while the Plaintiff views them more in the nature of investors who deposited funds with the Debtor purportedly for the purchase of aircraft.

For clarification, the "Loss Payees" or "Depositors" are the following parties: (i) Moncler Motors, LLC; (ii) BOE 30868, LLC; (iii) BOE 30874, LLC; (iv) BOE 30875, LLC; (v) BOE 34432, LLC; (vi) CMG 777 Escrow3, LLC; (vii) CMG 777 Escrow4, LLC; (viii) CMG 777 Escrow5, LLC; (ix) CMG DHC8Escrow7, LLC; (x) BOE 25014, LLC; (xi) DASH 4542, LLC; (xii) DASH 4554, LLC; (xiii) DASH 4555, LLC; (xiv) Bryn & Associates, P.A., together with Bayside Support Services LLC; (xv) RUSTY115, LLC; (xvi) HOPOP Corp.; (xvii) DAVIDPOP Corp.; (xviii) RUSTYPOP Corp.; and (xix) DARUSTY Corp.

by and between IPA, the Debtor and the Depositors are negligence claims by Depositors against IPA in cases pending in the Florida courts which have no bearing or effect on the bankruptcy estate, and which this Court should abstain from hearing. Before the Court for consideration are (1) *Loss Payees' First Amended Motion for Abstention* ("Motion to Abstain") [Doc. 91] and *Acrisure, LLC d/b/a Insurance Placement Alternatives' Objection, with Brief in Support, to Depositors' Motion for Abstention* [Doc. 92].

## II. Jurisdiction

The United States District Court for the Western District of Oklahoma has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1334(b) and 157. The Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference contained in Local Rule LCvR 81.4. The issue presently before the Court is whether it should abstain from hearing this dispute between non-debtor parties pursuant to 28 U.S.C. § 1334(c)(1). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## III. Background

To understand whether the Court should entertain this litigation, it is necessary to know the unique factual background in which this adversary proceeding arises.

The Debtor was an Oklahoma corporation, with its principal place of business in Oklahoma City, established to act as an escrow agent in aircraft purchase transactions. Debra Mercer-Erwin ("Mercer") was the 100% owner and principal officer of the Debtor. Many of the Debtor's transactions and escrows also involved American Guaranty Corporation ("AGC"), an aircraft titling and registration company also owned and operated

by Mercer.

In a Federal criminal Indictment filed in Federal Court in Texas, Mercer and her daughter, Kayleigh Moffet, were charged with conspiracy with others, primarily a foreign national, Frederico Machado, to enable distribution of cocaine in the United States by purchasing and illegally registering in the United States aircraft owned by foreign corporations and other individuals for export of drugs to other countries.[2] The Indictment detailed that between 2016 and 2020, the Debtor, Mercer and Machado were engaged in approximately $350 million in criminal activity which, for purposes relevant to this adversary, included a Ponzi Scheme[3] in which funds from "investors/Depositors" were deposited into escrow accounts with Debtor purportedly for the purchase of aircraft. In fact, and not disputed by any party in this bankruptcy, most, if not all, the aircraft purchases were fictitious. In some cases the aircraft was already owned and registered by a commercial airline and was not for sale; the aircraft had been seized by a foreign government, decommissioned or even destroyed; or the aircraft either did not exist or were owned by someone not involved in the transaction. The transactions were not real aircraft sales but a Ponzi Scheme in which earlier deposited funds were repaid, with

---

[2] The *Fifth Superseding Indictment, United States of America v. Debra Lynn Mercer-Erwin*, *et al,* Case No 4:20-CR-00212, Doc. 224, (E.D. Tex., Sherman Division, 2023) was unsealed on May 5, 2021. *The Fifth Superseding Indictment* was admitted into evidence without objection as the Trustee's Ex. 6 at the hearing on November 15, 2023, upon the Trustee's *Motion for Order Approving Compromise and Settlement Agreement between the Debtor and Certain Underwriters at Lloyd's London.* [BK-21-10994, Doc. 372; Tr. Doc. 457].

[3] A "Ponzi" scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors. *In re Hedged-Investments Associates, Inc.,* 48 F.3d 470, 471 n. 2 (10th Cir. 1995).

4

interest, by funds deposited by subsequent "buyers" (investors or Depositors), of non-existent aircraft.[4]

In addition to the Ponzi Scheme which involved deposits made by the Depositors as purported purchasers of aircraft, Mercer was convicted of using her aircraft title registration business to be a drug dealer because she was aware that the planes she had registered had been used to transport large quantities of cocaine and knew that many of her clients were in the illegal drug business and hid their identities and sources of money. She was convicted of money laundering as a result of her creating fake documents showing sales of planes that were not actually for sale in order to hide and move drug money.[5]

As part of the transactions by which the Depositors deposited their funds with the Debtor, the Debtor retained IPA to act as its broker to procure first-party crime insurance policies (the "Crime Policies"). In turn, IPA, acting as the broker for the Debtor, obtained Crime Policies issued by Underwriters. First-party crime insurance protects the company

---

[4] To understand the criminal conduct of the Debtor, acting through Mercer, the *Fifth Superseding Indictment* explained the difference between a legitimate aircraft purchase and the Ponzi Scheme operated by the Debtor, Mercer-Erwin and Machado. The Trustee adopted the same in his Trustee's Initial Report [BK-21-10994, Doc. 275, pgs. 16-18]. Underwriters included the explanation in its *Amended Complaint*. [Adv. No. 22-1053, Doc. 42, ¶ 53].

[5] After a two-week trial in May 2023, Mercer was convicted of money laundering, wire fraud, conspiracy to manufacture and distribute cocaine, and conspiracy to manufacture and distribute cocaine knowing that it would be imported into the United States. The Jury Verdict in Mercer's criminal case was admitted as Trustee's Ex. 7 at the hearing on the *Trustees Motion for Order Approving Compromise and Settlement Agreement between the Debtor and Certain Underwriters at Lloyd's London.* [BK-21-10994, Doc. 372; Tr. Doc. 457]. On November 20, 2024, Mercer was sentenced to two sentences of 192 months, the sentences to run currently. Mercer's daughter, Kayleigh Moffet, pled guilty to conspiracy to commit money laundering and conspiracy to commit export violations. She was given a sentence of five years probation. Frederico Machado, who was indicted along with Mercer, fled the United States before trial and is believed to be living in Argentina.

purchasing the insurance, here the Debtor, against any losses resulting from its employee theft or dishonesty. Under such insurance policies, the Debtor, not the Depositors, was the insured. It is important to note that a first-party commercial crime insurance policy does not provide coverage for theft or fraud committed by the business owners or senior management of the insured. It is not subject to question, and as stated in great detail in the *Fifth Superseding Indictment*, the adversary Amended Complaint filed by the Underwriters and IPA's Complaint filed in the present action, the Debtor committed fraud in obtaining through IPA the Crime Policies underwritten by the Underwriters.

Underwriters filed an adversary proceeding seeking a declaratory judgment that the Crime Policies were null and void as a result of Debtor's fraud in procuring the same.[6] Underwriters, the Trustee for Debtor and the Depositors entered into a settlement agreement, approved by the Court, under which Underwriters paid the Trustee $4 million. Based upon the settlement, the Court entered a *Final Consent Judgment* which included the following findings:

> 1. The Policies issued by Underwriters were procured by Wright Brothers through fraudulent misrepresentations of material fact with the intent to deceive Underwriters into issuing the Policies and to induce the [Depositors] into making the escrow deposits for the aircraft transactions at issue with Wright Brothers.
>
> 2. The fraudulent misrepresentations of material fact were material to the Underwriters' acceptance of the risks covered by the Policies and would not have been issued had the true facts been known.
>
> 3. Therefore, the Policies are deemed rescinded and void *ab*

---

[6] *Certain Underwriters at Lloyd's London and London Market Insurance Companies etc. v. Wright Brothers Aircraft Title Inc. et al.*, Adv. No. 22-1053.

*initio* in accordance with 36 O.S. § 3609.[7]

While the *Final Consent Judgment* extinguished any and all possible rights or claims of the Debtor under the Crime Policies, it specifically preserved any possible claims which the [Depositors] might have against IPA:

> 6. Nothing herein shall limit, diminish, waive, or in any manner obviate in any way the terms, agreements and/or benefits to the [Depositors] set forth in the Term Sheet, including with respect to claims they may have against entities or individuals other than Underwriters and the Wright Brothers Estate, including, without limitation, Acrisure, LLC and Bank of America, NA.

[Adv. No. 22-1053, Doc. 184].

IPA's Complaint also alleges that prior to the involuntary bankruptcy being filed against the Debtor, certain of the Depositor Defendants filed suit against Underwriters and IPA in Florida state courts (later removed to and now pending in the Bankruptcy Court for the Southern District of Florida).[8] The Florida lawsuits were primarily directed at Underwriters and sought recovery under the Crime Policies but also asserted claims against IPA premised upon its alleged negligence in failing to procure insurance coverage. Following this Court's entry of the *Final Consent Judgment* determining the Crime Policies null and void *ab initio* as a result of the Debtor's fraud in procuring the same, the Plaintiffs in the Florida litigation (including several of the Defendant Depositors here) dismissed the

---

[7] *Id.* at Adv. No. 22-1053, Doc. 184.

[8] *See Rusty115 Corp. et al v. Certain Underwriters at Lloyd's et al.*, Case No. 2022-018226-CA-01 (11th Judicial Circuit Court for Miami-Dade County, Fla.); *Moncler Motors, LLC et at v Certain Underwriters at Lloyd's London et al.*, Case No. 2022-018221-CA-01 (11th Judicial Circuit Court for Miami-Dade County, Fla.); *Bryn & Assoc., P.A. et. al. v. Certain Underwriters at Lloyd's London et al.*, Case No. 2022-018223-CA-01 (11th Judicial Circuit Court for Miami-Dade County, Fla.).

litigation against Underwriters, leaving IPA as the only remaining defendant. By their Motion to Abstain, the Depositors seek to have all issues between them and IPA adjudicated in the Florida litigation rather than this bankruptcy court.

## IV. Grounds For Abstention

Abstention, like many bankruptcy provisions begins with a distinction between core and non-core proceedings. The decision to abstain often depends upon whether the Court has core or non-core jurisdiction, which determines whether mandatory or permissive abstention applies. Core proceedings are proceedings that involve rights created by bankruptcy law or which only arise in a bankruptcy proceeding. *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir. 1990) ("Core proceedings are proceedings which have no existence outside of bankruptcy."); *Telluride Asset Resol., LLC v. Telluride Glob. Dev., LLC (In re Telluride Income Growth LP)*, 364 B.R. 390 (10th Cir. BAP 2007). Bankruptcy courts have core jurisdiction over all cases that satisfy one of the following three criteria: (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in a case under Title 11. *In re Resorts Int'l, Inc.,* 372 F.3d 154, 162 (3rd Cir. 2004) (citation omitted). The term "'arising in' refers to administrative matters that are not based on any right expressly created by [T]itle 11 but would nevertheless have no existence outside of the bankruptcy case." *Telluride,* 364 B.R. at 397-98 (quoting *In re ACI-HDT Supply Co.*, 205 B.R. 231, 234-35 (9th Cir. BAP 1997)). Bankruptcy courts have full adjudicative power over core proceedings. *Resorts Int'l,* 372 F.3d at 162.

Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2) which requires the bankruptcy court to abstain from hearing a proceeding if specific criteria are met: (1) the motion to abstain is timely; (2) the proceeding is based on a state law claim or cause of

8

action; (3) the proceeding is related to a bankruptcy case but does not arise under or in the bankruptcy proceeding; (4) there is no independent basis for federal jurisdiction other than the bankruptcy; (5) the proceeding has already been commenced in a state court; and (6) the matter can be timely adjudicated in the state court. If all of these elements are satisfied, the court must abstain from hearing the matter. *See Telluride,* 364 B.R. at 398; *In re George Love Farming, LLC*, 438 B.R. 354 (Table), 2010 WL 813689, at *6 (10th Cir. BAP 2010); *Montoya v. Curtis (In re Cashco, Inc.),* 614 B.R. 715, 723 (Bankr. D. N.M. 2020). The existence of a non-core proceeding is required for mandatory abstention to apply.

Non-core proceedings can exist independent from the bankruptcy proceeding, as they do not invoke substantive rights created by the bankruptcy. *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987). "The bankruptcy court has jurisdiction over non-core proceedings when they are related to the bankruptcy in that they could conceivably have an effect on the bankruptcy estate." *Telluride*, 364 B.R. at 398 (quoting *Gregory Ranch v. Lyman (In re Gregory Rock House Ranch, LLC),* 339 B.R. 249, 253 (Bankr. D. N.M. 2006). In a non-core proceeding, unless the parties consent to entry of a final order of judgment by the bankruptcy judge, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court...." 28 U.S.C. § 157(c)(1).

Title 28 U.S.C. § 1334(c)(1) governs permissive abstention:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

In other words, § 1334(c)(1) permits abstention from core matters and non-core matters

when it is in the "interest of justice," judicial economy, or respect for state law.

IPA contends that (1) the potential cause of action by the Debtor against IPA for negligent procurement of the Crime Policies constitutes "property of the bankruptcy estate" under § 541 making this a core proceeding, (2) there has been no abandonment of any such claim pursuant to § 554[9] and (3) any such claim by IPA is derivative of any claim of the Debtor against IPA. Thus, IPA asserts that its action for declaratory judgment is a core proceeding which "arises under" and vests the bankruptcy court with jurisdiction.

Apparently seeking to avoid the issue of the Debtor's non-abandoned negligence claim as "core," which would preclude mandatory abstention, Depositors tacitly concede that the IPA's claims are core.[10] Since permissive abstention explicitly includes "proceeding[s] arising under title 11 or arising in" title 11, the fact that IPA's claim might arguably be a core proceeding is irrelevant. *In re Thrive Nat'l Corp.*, 605 B.R. 229, 236

---

[9] Had the Trustee moved to abandon the Debtor's potential, but certainly questionable, claim of negligence against IPA there would be little doubt that the motion would have been granted.

[10] That is not necessarily true. A debtor's pre-petition tort claim for negligence is generally not considered a core proceeding because it does not invoke a substantive right under Title 11 or arise only in the context of a bankruptcy case. Pre-petition tort claims, such as negligence, typically do not meet these criteria because they are based on state law and could have been brought independently of the bankruptcy case. *Diamond Mortg. Corp. Of Illinois v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990); *Hoffmeyer v. Loewen Group Int'l, Inc. (In re Loewen Group Int'l, Inc.)*, 279 B.R. 471, 477 (Bankr. D. Del. 2002); *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 372 (Bankr. S.D. N.Y. 1998) (finding that pre-petition state law claims "are not core claims under 28 U.S.C. § 157(b)(2)(O) merely because the estate will receive funds that in turn will affect creditors' recoveries, if liability is found."); *Hayim v. Goetz (In re SOL, LLC)*, 419 B.R. 498, 506 (Bankr. D. Fla. 2009) ("[A] matter cannot be deemed to be core merely because the debtor holds a claim which, if successful, could increase the assets of the estate.") (citing *In re Tidewater Lodging Group, LLC,* 2009 WL 909417 at *2 (Bankr. S.D. Fla. 2009)); *Coho Oil & Gas, Inc. v. Finley Resources, Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004). Thus, the Debtor's potential claim for negligent procurement of insurance against IPA is not a core matter.

(Bankr. D. Utah 2019) ("This section permits bankruptcy courts to abstain from **core matters** and non-core matters when it is in the 'interest of justice,' judicial economy or respect for state law.") (citation omitted) (emphasis original). Depositors seek to have this Court abstain from hearing this adversary proceeding under the doctrine of permissive abstention.

Permissive abstention, applying to both core and non-core matters, falls within the sound discretion of the bankruptcy court. *In re Telluride Global Dev., LLC,* 380 B.R. 585, 593-94 (10th Cir. BAP 2007). Still, abstention is "an extraordinary and narrow exception to the duty of the federal courts to adjudicate controversies which are properly before it." *In re Com. Fin.l Servs., Inc.,* 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000); *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244 (1976). The party moving for permissive abstention has the burden of establishing that abstention is appropriate under 28 U.S.C. § 1334(c)(1). *Commercial Financial Services*, 251 B.R. at 429; *In re Forrest Hill Funeral Home & Mem'l Park-South,* 364 B.R. 808, 819 (Bankr. E.D. Okla. 2007).

Courts look to a number of factors in determining whether permissive abstention under § 1334(c)(1) is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention;
>
> (2) the extent to which state law issues predominate over bankruptcy issues:
>
> (3) the difficulty or unsettled nature of the applicable law;
>
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden the proceeding places on the bankruptcy court's docket;

(10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

*See e.g. Com. Fin. Servs., Inc. v. Bartmann (In re Com. Fin. Servs, Inc.)*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000); *In re Kretchmar,* 591 B.R. 876, 881-82 (Bankr. W.D. Okla. 2018); *Delphi Auto. Sys., LLC v. Segway, Inc.,* 519 F.Supp.2d 662, 670-71 (E.D. Mich. 2007).

This standard "is a multi-factor balancing test, not a rule in which every element must be satisfied [.]" *In re Anderson,* 670 B.R. 528, 547 (Bankr. S.D. Ohio 2025) (quoting *Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 714-15 (Bankr. S.D. Ohio 2012)). "[N]o one factor is necessarily determinative," "not all factors need to weigh in favor of permissive abstention in order for it to be appropriate," and "the relevance and importance of each [factor] will vary with the particular circumstances of each case [.]" *Id.* at 715 (quoting *In re Johnson*, 484 B.R. at 715). In other words, courts "need not plod

through a discussion of each factor in the laundry list developed in prior decisions." *Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP (In re Tronox)*, 603 B.R. 712, 726 (Bankr. S.D. N.Y. 2019). "The analysis is not a mechanical or mathematical exercise," but one that "largely ask[s] the Court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts." *Id*.

### Factor 1. The effect of abstention on the administration of the bankruptcy estate.

The Depositors' Motion to Abstain is  for the purpose of them being able to continue their existing lawsuit against IPA in Florida for its alleged negligent procurement of the Crime Policies sold to the Debtor. That lawsuit is an action only between IPA and the Depositors, two non-debtors. Letting those parties proceed in the Florida litigation will have absolutely no effect on the administration of this estate. On the other hand, not abstaining will result in this Court presiding over a protracted legal fight between IPA and the Depositors which can result in no benefit to this estate.

It was known from the inception of this case that the only probable significant recoveries by the Trustee were from funds in Debtor's accounts not seized by the Government, claims against Underwriters under the Crime Policies and a claim against Mercer's husband who asserted an ownership interest in proceeds from the sale of stock held in the Debtor's investment account at the time of bankruptcy. Both claims against Underwriters and Mercer's husband have been resolved by payment to the Trustee. The claim against Underwriters by way of a $4 million settlement approved by the Court and the recovery of a $319,000 judgment in an adversary proceeding by the Trustee against Mercer's husband.

Pursuant to an *Order Resolving Issues Raised at Status Conference Held On September 17, 2025 and Directing Compliance* [BK- 21-10994, Doc. 552]*,* on October 24, 2025, the Trustee filed a *Motion for Authority to Make Interim Distribution* which, among other things, (1) advised the Court that all scheduled and known assets of the Estate had been reduced to cash or abandoned, (2) advised the Court that the Trustee had on hand and available for distribution $3,493,030.64 and (3) sought authority to distribute $2,247,202.96 to the allowed priority and unsecured claims, including the Depositors, on a pro rata basis, less a reserve for claims for which the Trustee has pending Objections, estimated administrative claims and the payment to other parties pursuant to the Settlement Agreement. [BK- 21-10994, Doc. 554]. Further, the Trustee has finalized the claims objection process and  is concluding the final requests for approval of administrative compensation of the professionals employed in the estate.

This bankruptcy case is on the brink of closing. No more funds are to come into the Estate. The Court's continued jurisdiction over this adversary proceeding will keep the administration of the estate open and needlessly increase administrative expense. The only remaining dispute in this bankruptcy is between two non-debtors, IPA and the Depositors.

It is well established that the bankruptcy court should not exercise jurisdiction over a dispute between two non-debtors where the outcome would have no economic effect on the debtor's estate. The Tenth Circuit (along with the First, Fourth, Fifth, Six, Eighth, and Ninth Circuits) in *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir. 1990), adopted the definition of "related to" jurisdiction set by the Third Circuit in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984), (overruled on other grounds by *Things Remembered, Inc. v.*

14

*Petrarca*, 516 U.S. 124, 116 S.Ct. 494 (1995)):

> Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. The test for determining whether a civil proceeding is related in bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate.

(citations omitted) (Emphasis added). *See also Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 771 (10th Cir. BAP 1997) ("related proceedings 'include' ... suits between third parties which have an effect on the bankruptcy estate.") (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5, 115 S.Ct. 1493 (1995)); *In re Otero County Hosp. Ass'n,* 527 B.R. 719, 758 (Bankr. D. N.M. 2015). Based on this test, the inquiry becomes whether the Depositors' state law claims in the Florida litigation have an effect upon the bankruptcy estate. For the reasons stated above, the Court finds that they do not.[11]

What also cannot be overlooked is the inequity which would result from denying the Depositors' Motion to Abstain. The Depositors withdrew their objection to Underwriters' Complaint for Declaratory Judgment and approved the *Final Consent Judgment* upon the condition, stated in the *Judgment,* that $4 million would be paid to the bankruptcy estate

---

[11] The fact that IPA asserts that the Depositors hold a derivative cause of action from the debtor estate is of no import. The bankruptcy court does not have jurisdiction over derivative causes of action brought on behalf of a non-debtor party against non-debtor defendants. *In re Markley,* 460 B.R. 793, 797 (Bankr. D. Kan. 2011).

15

(with Depositors having in excess of 90% of the claims), and that the Depositors reserved all rights to proceed against IPA in the Florida litigation. Requiring the Depositors to continue their fight with IPA in the bankruptcy court was not part of the bargain they made and which this Court approved by the *Final Consent Judgment.*

In the Court's opinion, Factor 1, the effect on the administration of the estate, and lack of "related to" jurisdiction, is outcome determinative on the question of abstention. While the consideration of other abstention factors is not necessary, the Court further finds that several of the other factors, applicable to this case, by which courts determine whether permissive abstention weigh heavily in favor of the Depositors:

**Factor 2. That state law issues predominate over the bankruptcy issues**. The issue to  be litigated between the Depositors and IPA is a negligence action (negligent

procurement of an insurance policy) governed by state law, either Oklahoma (as provided in the Crime Policies) or Florida.

**Factor 3. The presence of related proceedings commenced in state or other non-bankruptcy court.** As stated above, there is pending in Florida courts litigation involving this very issue between IPA and the Depositors. See *footnote 8.*

**Factor 4. The burden of the bankruptcy court's docket.** This has been discussed above as part of Factor 1 and weighs heavily in favor of the Depositors.

**Factor 5. The existence of a right to a jury trial**. The Depositors have not consented to the entry of final orders and judgments by this Court pursuant to Rule 7012 (b) of the Fed. R. Bankr. P. because they demanded a jury trial. This Court cannot conduct a jury trial.

**Factor 6. The presence in the proceeding of non-debtor parties.** Proceeding

16

with the of Florida litigation will only involve non-debtor parties. Furthermore, IPA is neither a creditor nor a debtor of the Debtor, and it should not be permitted to maintain an action in this Court.

## V. Conclusion

A court may abstain from both core and non-core matters when abstention serves the interest of justice, judicial economy, or comity with State courts. *Telluride Income*, 364 B.R. at 398; 11 U.S.C. § 1334(c)(2). The Court finds that this adversary involves a dispute between two non-debtors. Suits between non-debtors do not belong in bankruptcy court absent related to jurisdiction. Related to jurisdiction is not present here because the outcome of the litigation between IPA and the Depositors could have no possible effect in altering the Debtor's rights, liabilities, options or freedom of action in any way, thereby impacting the handling and administration of the bankruptcy estate. Accordingly, the Court finds it lacks jurisdiction over the subject matter of this action, and

**IT IS ORDERED** that *Loss Payees' First Amended Motion for Abstention* [Doc. 91] is hereby **Granted**, and this case is hereby **Dismissed** without prejudice.

# # #